IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ROBERT G. STRAUB,<br><br>           Plaintiff,<br><br>   vs.<br><br>COUNTY OF MAUI, DIRECTOR TEENA RASMUSSEN,<br><br>           Defendants. | Civ. No. 17-00516 JMS-RLP<br><br>ORDER DENYING DEFENDANT COUNTY OF MAUI'S MOTION TO DISMISS, ECF NO. 12 |

## ORDER DENYING DEFENDANT COUNTY OF MAUI'S MOTION TO DISMISS, ECF NO. 12

### I. INTRODUCTION

Defendant County of Maui (the "County") has moved to dismiss Plaintiff Robert G. Straub's ("Straub") First Amended Complaint ("FAC") against the County and Teena Rasmussen ("Rasmussen"), the Managing Director of the County Department of Economic Development (the "Department"). ECF No. 12. The County contends that the FAC consists of "mere recitation of the elements of each cause of action" and, therefore, should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Def.'s Mem. at 1, ECF No. 12-1. For the following reasons, the Motion is DENIED.

## II. BACKGROUND

The FAC includes the following factual allegations. Straub worked for the County for sixteen years, but not from 2008 to 2011. FAC ¶¶ 5, 8, ECF No. 8. After Mayor Alan Arakawa was elected in 2011, Straub "came back" to the County as the Mayor's office manager. *Id.* ¶ 8. Most recently, he worked in the County's Business Resource Center ("BRC"), under the supervision of Karen Arakawa. *Id.* ¶ 5, 11.

In 2017, Straub took a 30-day family medical leave to care for his wife, who suffers from Parkinson's disease. *Id.* ¶¶ 5, 18. Four days after he returned to work, Rasmussen fired him, ostensibly because of "budget issues." *Id.* ¶¶ 5, 7. But "Rasmussen told others in the [Department] that she didn't want people to be off the job for more than 2 weeks and [Straub] was gone for 30 days." *Id.* ¶ 10. Additionally, Straub contends that he was replaced by a higher paid individual, that the BRC remained at the same number of employees after he left, and that "many County employees" received substantial raises retroactive to July 2016. *Id.* ¶¶ 7, 10. Straub, who is 71, also contends that he was replaced by a "substantially younger and less qualified" individual. *Id.* ¶ 6.

After he was fired, Straub spoke to Mayor Arakawa and also to Rasmussen's "boss," Chief of Staff Herman Andaya, who both "denied having any involvement in the decision to terminate him and supported him remaining employed in the Mayor's office." *Id.* ¶ 9.

Straub obtained right-to-sue letters from the Equal Employment Opportunity Commission ("EEOC") and the Hawaii Civil Rights Commission ("HCRC") in October 2017. *Id.* ¶ 12.

At some point, Karen Arakawa "told others that the County could not buy t-shirts from [Straub's] company this year, as [it] had for the past 6 years, because of [Straub's] claims against the County." *Id.* ¶ 11.

Straub filed his original Complaint against the County in October 2017, ECF No. 1, and the FAC naming Rasmussen on November 9, 2017, ECF No. 8. The FAC alleges four Counts: (1) interference and retaliation in violation of the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2615(a)(1) and (2), based on the termination of Straub's employment; (2) interference and retaliation under the FMLA based on the County's "termination of purchasing t-shirts from [Straub's] Ultra Hawaii business"; (3) violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12122(b)(4); and (4) age discrimination in violation of Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623(a)(1) and Hawaii Revised Statutes ("HRS") § 378-2. FAC ¶¶ 14-21.

The County filed its Motion to Dismiss on November 24, 2017, ECF No. 12, and Straub filed his Opposition on January 12, 2018, ECF No. 20. The County replied on January 22, 2017. ECF No. 21. In the meantime, Rasmussen signed a waiver of service on December 7, 2017, and on January 30, 2018,

Corporation Counsel entered an appearance for Rasmussen and filed a Substantive Joinder to the County's Motion on her behalf. ECF Nos. 17, 22.

A hearing was held on February 5, 2018.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Such a dismissal is proper "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Capital Partners*, LLC, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

In resolving a Rule 12(b)(6) motion, the court "accept[s] as true all well-pleaded allegations of material fact, and construe[s] them in the light most favorable to the non-moving party." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 784 (9th Cir. 2012) (quoting *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)). A "formulaic recitation of the elements of a cause of action" will not defeat a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This tenet — that the court must accept as true all of the allegations contained in the complaint — "is inapplicable to legal conclusions." *Id.* Accordingly, "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). But "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## IV. **DISCUSSION**

**A.    FMLA Claims**

The County contends that Straub's FMLA claim based on the termination of his employment fails because the FAC does not (1) include facts relating to "how [Straub's] position at the BRC, under the supervision of Manager Arakawa, is connected to Rasmussen's position as Managing Director of the Office of Economic Development"; (2) "indicate if [Straub] had any on-the-job interactions with Rasmussen"; and (3) expressly "allege that Rasmussen knew that Plaintiff had been using FMLA leave." Def.'s Mem. at 10-11, ECF No. 12-1. Regarding the t-shirt sales, the County contends that the claim fails because (1) the County's failure to purchase t-shirts from Straub's private business "is not an adverse employment action," (2) the "State and County procurement law and policy" does not "guarantee that any vendor is entitled to a purchase contract with the [County] indefinitely," and (3) Straub has failed to specify any timeframe for Karen Arakawa's statement, to allege that she was authorized to make decisions

regarding the County's t-shirt purchases, or to allege damages. *Id*. at 12; Reply at 5-6.

"The FMLA creates two interrelated, substantive employee rights: first, the employee has a right to use a certain amount of leave for protected reasons, and second, the employee has a right to return to his or her job or an equivalent job after using protected leave." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001) (citing 29 U.S.C. §§ 2612(a), 2614(a)). Two "theories for recovery" are available under § 2615 of the FMLA — an "interference theory" under subsection (a)(1) and a "retaliation or discrimination theory" under subsection (a)(2).[1] *Sanders v. City of Newport*, 657 F.3d 772, 777 (9th Cir. 2011) (quoting *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002)). In the Ninth Circuit, § 2615(a)(1) applies to an employee who suffers unlawful actions, including termination, as a consequence of taking FMLA leave, whereas "§ 2615(a)(2) applies only to employees who oppose employer practices made unlawful by [the] FMLA." *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1133 n. 7, 1135-36 (9th Cir. 2003) (emphasis omitted).

---

[1] Section 2615(b) also addresses "interference with proceedings or inquiries," making it "unlawful for any person to discharge or in any other manner discriminate against any individual because such individual" has, among other things "filed any charge, or has instituted or caused to be instituted any proceeding, under or related to this subchapter." Although Straub's factual allegations might implicate this subsection, he has asserted his claims under subsection (a) only. *See* FAC ¶¶ 13-16.

In Count One of the FAC, Straub alleges that he was fired because he took a 30-day FMLA leave. To prevail on this claim, Straub must prove that his "taking of FMLA-protected leave constituted a negative factor in the decision to terminate" him. *Id.* at 1135-36 (quoting *Bachelder*, 259 F.3d at 1124-25.); *see also* 29 C.F.R. § 825.220(c). Based on Rasmussen's position with the County and her alleged statement that Straub took a 30-day leave, the court can fairly infer that Rasmussen knew of Straub's FMLA leave. And based on Rasmussen's statement, the timing of Straub's firing, and the seemingly pretextual nature of the reason he was given for it, the court can fairly infer that Rasmussen considered Straub's FMLA leave as a negative factor in her employment decision. Thus, Straub has stated a plausible claim for violation of § 2615(a)(1).

Count Two of the FAC is somewhat unclear. Straub asserts that the County's "termination of purchasing t-shirts from [his] Ultra Hawaii business constitutes interference and retaliation for exercising FMLA rights, under 29 U.S.C. § 2615(a)(1) and (2)," but the only factual allegation regarding t-shirt purchasing is Karen Arakawa's alleged statement that "the County could not buy t-shirts from [Straub's] company . . . because of [his] claims against the County." Therefore, the court interprets this Count as a retaliation claim under § 2615(a)(2).

The Ninth Circuit has not yet dealt with an FMLA retaliation claim, but other Circuits have described the necessary elements as similar to those for Title VII and other discrimination claims — requiring a showing of: (1) protected

activity, (2) an adverse employment action, and (3) a causal link between the two.[2] *See, e.g., Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1017 (7th Cir. 2000) (finding the "proscriptive provisions [of the FMLA] . . . create a cause of action analogous to the actions for discrimination and for retaliation that are found in Title VII and the other discrimination statutes"); *see also Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006); *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997); *cf. Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 894 (9th Cir. 2005) (involving retaliation in the Title VII context).

In the Title VII context, an "adverse employment action" has been broadly defined, and may include post-employment activity. *See Burlington N. & Santa Fe Railway Co. v. White*, 548 U.S. 53, 67 (2006) ("The scope of the antiretaliation provision [in Title VII] extends beyond workplace-related or employment-related retaliatory acts and harm); *Robinson v. Shell Oil Co.*, 519 U.S. 337, 339, 345-46 (1997) (finding the term "'employees,' as used in § 704(a) of Title VII . . . includes former employees," and determining a former employee "may bring suit against his former employer for postemployment actions allegedly

---

[2] Section 704(a) sets forth Title VII's antiretaliation provision in the following terms:
> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

8

taken in retaliation for [the former employee's] having filed a charge with the [EEOC]"); *Hashimoto v. Dalton*, 118 F.3d 671, 675 (9th Cir. 1997) ("A plaintiff may seek relief for retaliatory actions taken after her employment ends if 'the alleged discrimination is related to or arises out of the employment relationship.'" (quoting *Passer v. Am. Chem. Soc.*, 935 F.2d 322, 330 (D.C. Cir. 1991)); *Ray v. Henderson*, 217 F.3d 1234, 1242-43 (9th Cir. 2000) (citing EEOC guidance and holding that Title VII plaintiff need only show "adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity").

Section 2615(a)(2) itself prohibits discrimination "against any individual for opposing any practice made unlawful by this subchapter," not just an employee. And Department of Labor implementing regulations state that "[a]n employer is prohibited from discharging or in any other way discriminating against any person (*whether or not an employee*) for opposing or complaining about any unlawful practice under the [FMLA]." 29 C.F.R. § 825.220(a)(2) (emphasis added); *see also Xin Liu*, 347 F.3d at 1133 (finding that Department of Labor implementing regulations for the FMLA are entitled to deference under *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-44 (1984)).

In the context of a Title VII discrimination claim, the Fifth Circuit addressed a similar post-employment action. *Allen v. Radio One of Tex. II, L.L.C.*,

9

515 F. App'x 295 (5th Cir. 2013). There, the plaintiff brought a retaliation claim against her former employer based on that employer's refusal "to start doing business with her 18 months after [her] termination." *Id*. at *1. Although the court ultimately found that Plaintiff had not proved her case at trial, it did not find that such a claim could never stand. Rather, it stated, "the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id*. at *6 (quoting *Burlington N.*, 548 U.S. at 69).

Here, Straub has alleged that he engaged in a protected activity by taking FMLA leave, and he alleges that the County retaliated by refusing to continue its six-year practice of purchasing t-shirts from his business — an action that conceivably could "deter [an individual] from engaging in protected activity." *Ray*, 217 F.3d at 1242-43. Karen Arakawa's alleged statement expressly links the County's action to the protected activity; therefore, whether she was authorized to make procurement decisions herself or whether Straub had a "right" to a continued contract under the County's procurement rules, are immaterial to the Motion before the court. And, although the FAC asks only for reinstatement and back pay within Count Two itself, FAC ¶ 16, it also requests compensatory damage generally, FAC ¶ 21, and the court can infer that the loss of revenue from the sale Straub otherwise may have made would result in financial loss. Straub has stated a plausible claim for retaliation under § 2615(a)(2).

**B.     ADEA Claim**

10

To prevail on his claim for age discrimination, Straub will eventually have to prove that he was (1) at least forty years old, (2) performing his job satisfactorily, (3) discharged, and (4) either replaced by a substantially younger employee with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of age discrimination. *See Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).

The County contends that Straub insufficiently alleges this claim because he alleges in a merely conclusory fashion that he was qualified for and adequately performing his job and that his replacement was significantly younger than he. Def.'s Mem. at 4-5. The court disagrees.

Not only does Straub allege that he was qualified for his position and performing satisfactorily, those facts may be reasonably inferred based on Straub's long-time employment with the County and the County's own asserted reason for firing him — "budget issues," not performance-related concerns. And contrary to the County's assertion, the allegation that the Mayor and Chief of Staff supported his continued employment, even absent an express allegation that they had first-hand knowledge of Straub's job performance, further supports Straub's claim that he was qualified for and adequately performing his job. Straub's allegations on these points are not merely conclusory, but are plausible based on reasonable inferences drawn from specific factual allegations.

11

Further, the case upon which the County relies is inapposite. In *Hicks v. Dollar Gen. Mkt*, 2017 WL 874576 (D. Nev. Feb. 8, 2017), the plaintiff claimed that she had been unlawfully refused a promotion, and the court dismissed because she had failed to allege facts supporting an inference that she was *more qualified* than her competition for the position. *Id*. at *2. But here, where no promotion was involved, the County has neither argued nor cited authority showing, that Straub must show *greater* qualification than his replacement for the position he held, only that he was qualified, which he has sufficiently alleged.

Finally, Straub's failure to allege his replacement's age does not merit dismissal. Straub has alleged that he was replaced by a specific individual whom he claims is "significantly younger" than he, although he doesn't know the

///

///

///

///

individual's exact age.[3] Opp'n at 15-16. None of the County's authority suggests that a complaint must be dismissed unless an exact age difference is alleged.

**C.   ADA Claim**

---

[3] At oral argument, there was some suggestion that Straub's replacement is only three years younger than he. This fact, however, is not in the record, and the court declines to consider it at this stage in the litigation.

An association-discrimination claim under the ADA requires proof that the plaintiff was qualified to perform his or her job, the employer knew the employee was associated with a disabled person, and the employer took an adverse employment action based on that association. *See Austin v. Horizon Human Servs. Inc.*, 2014 WL 1053620, at *2 (D. Ariz. Mar. 19, 2014).

The County contends that Straub's ADA claim fails because he did not allege "a plausible causal connection between his association with his wife and the termination of his employment." Def.'s Mem. at 13. But the County relies on a summary judgment case with wildly different facts. *See Wong v. Bd. of Educ. of Cmty. Consol. Sch. Dist. 15*, 2015 WL 1117715 at *9 (N.D. Ill. Mar. 10, 2015) (finding no prima facie evidence of association discrimination when school principal's note stating she "had told [the plaintiff teacher] that [principal's] friend had had a depressed boyfriend" was the only evidence that the school board knew plaintiff's husband suffered from that disability). And a plausible connection exists between Straub's firing and his association with his wife based on the same facts that make his first FMLA claim plausible — the timing of his firing, Rasmussen's statement regarding her desire for shorter leave time, and the seemingly pretextual nature of the explanation she gave for the termination. Moreover, although the County argues that dismissal is appropriate because Straub did not expressly allege that Rasmussen knew of Straub's wife's disability, a reasonable inference of Rasmussen's knowledge may be drawn based on her

13

position within a small county government. *See Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief . . . [is] a context specific task that requires the . . . court to draw on its judicial experience and common sense.")

Straub has made a plausible claim for violation of the ADA.

## V. CONCLUSION

Although Straub's complaint lacks certain factual detail, it states plausible claims for relief, and therefore, is not so deficient that dismissal is warranted under Rule 12(b)(6). The County's Motion to Dismiss is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 7, 2018.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Straub v. County of Maui*, Civ. No. 17-00516 JMS-RLP, Order Denying County of Maui's Motion to Dismiss, ECF No. 12