IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ROBERT G. STRAUB,<br><br>                Plaintiff,<br><br>   vs.<br><br>COUNTY OF MAUI; DIRECTOR<br>TEENA RASMUSSEN,<br><br>                Defendants. | CIV. NO. 17-00516 JMS-WRP<br><br>AMENDED ORDER (1) GRANTING<br>IN PART AND DENYING IN PART<br>DEFENDANTS' MOTION FOR<br>SUMMARY JUDGMENT, ECF<br>NO. 93; AND (2) DENYING<br>PLAINTIFF'S COUNTER MOTION<br>FOR PARTIAL SUMMARY<br>JUDGMENT, ECF NO. 101 |

**AMEMDED ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, ECF NO. 93; AND (2) DENYING PLAINTIFF'S COUNTER MOTION FOR PARTIAL SUMMARY JUDGMENT, ECF NO. 101**

## I. INTRODUCTION

On November 9, 2017, Plaintiff Robert G. Straub ("Straub") filed a First Amended Complaint ("FAC") alleging claims against Defendants County of Maui (the "County") and Teena Rasmussen ("Rasmussen"), Managing Director of the County Office of Economic Development (the "OED") (collectively, "Defendants") relating to his termination from his job with the County. ECF No. 8.

Currently before the court are: (1) Defendants' Motion for Summary Judgment, ECF No. 93; and (2) Straub's Counter Motion for Partial Summary

Judgment, ECF No. 101 (collectively, the "Motions").  Based on the following, the

court: (1) GRANTS in part and DENIES in part Defendants' Motion for Summary

Judgment; and (2) DENIES Straub's Counter Motion for Partial Summary

Judgment.

## II. <u>BACKGROUND</u>

### A.     Factual Background[1]

In January 2011, Mayor Alan Arakawa (the "Mayor") appointed

Straub to work in the Mayor's Office as an "at will employee," and the Mayor's

Chief of Staff, Herman Andaya ("Andaya") directly supervised Straub until 2014

when Straub was transferred.  Def. CSF ¶¶ 1-2, 4; *see also* Andaya Decl. ¶ 4, ECF

No. 94-4.  Straub was transferred to the OED in late 2014, and in January 2015,

Straub was assigned to the OED's Business Resource Center (the "BRC") located

at an OED satellite office in the Maui Mall.  Def. CSF ¶ 4, 6; Rasmussen Decl. ¶ 3,

ECF No. 94-3; Andaya Decl. ¶ 4.  From 2015 until 2017 when Straub was

terminated, Straub worked at the BRC under the direct supervision of Karen

Arakawa ("Arakawa"), and Straub and Arakawa were the only two OED

---

[1] These facts are not materially disputed.  Straub disputes a number of Defendants' facts included in their CSF, but gives no explanation as to what part of each fact he disputes.  *See* ECF No. 102 at PageID #1969.  For example, Straub disputes Defendants' CSF ¶ 4, which states, "[i]n late 2014, Mayor and Andaya transferred Straub into OED.  They felt Straub was using his position at Kalana O Maui to meddle in Parks Department business."  It seems likely that Straub only disputes the second sentence (and not the fact that he was transferred in 2014).

employees at the BRC. Def. CSF ¶ 6; *see also* Rasmussen Decl. ¶ 5. Rasmussen was the Director of the OED. Rasmussen Decl. ¶ 2.

While working at the BRC, Straub took three periods of Family and Medical Leave Act (the "FMLA") leave to care for his wife, Francine Straub ("Francine"), who lives in Arizona.[2] Def. CSF ¶ 19. Straub applied for and was approved to take FMLA leave from November 2 to 13, 2015. Pl. Ex. 1, ECF No. 102-6. As part of the FMLA approval process, Straub submitted a "Certification of Health Care Provider for Family Member's Serious Health Condition" hand-signed by Dr. Ramit Kahlon ("Kahlon"). *See id.*; Def. Ex. C, ECF No. 94-14. Straub wrote in the certification that he needed the leave because "wife became partially blind due to M.S. disease. Need to deal with Dr appts [sic] as well as emotional needs due to this set back & physical condition." ECF No. 94-14 at PageID #1697.

Straub then applied for and was approved to take FMLA leave from June 22 to July 8, 2016. Pl. Ex. 2, ECF No. 102-7. As part of the FMLA approval process, Straub submitted an Application for Leave dated April 22, 2016, and a "Certification of Health Care Provider for Family Member's Serious Health Condition" that was purportedly "digitally signed" by Dr. Ahmad Nizam ("Nizam") on April 12, 2016. *Id.*; Def. Ex. A, ECF No. 94-12. Straub wrote in the

---

[2] While the parties dispute what Francine's illnesses were, there is no question that Francine was diagnosed at times with Multiple Sclerosis and Parkinson's disease. *See, e.g.*, Def. Ex. D, ECF No. 94-15 at PageID #1701.

certification that he needed the leave because "[d]ue to blindness and several follow up Doctor appointments, there is a need [for Straub] to be accessible for 2-3 weeks . . . ." ECF No. 94-12, at PageID #1689.  In the section to be filled out by the health care provider, it states that "[i]t has been determined that patient has Parkinson's Disease and should be seen every 6 months at least."  *Id.* at PageID #1690.

Next, Straub applied for and was approved to take FMLA leave from January 3 to 20, 2017.  Def. Ex. H, ECF No. 94-19.  As part of the FMLA approval process, Straub submitted an Application for Leave dated October 24, 2016, *id.*, and a "Certification of Health Care Provider for Family Member's Serious Health Condition" that was purportedly "digitally signed" by Nizam on October 20, 2016, Pl. Ex. 3, ECF No. 102-8; Def. Ex. B, ECF No. 94-13.  Straub described the reason he needed leave: "[c]ontinuous follow up for Parkinson's Disease at Muhammad Ali Parkinson's Institute . . . And with Dr [sic] Nizam (neurology Specialist)." ECF No. 94-13 at PageID #1693.

On January 27, 2017, Rasmussen told Straub that he would be laid off, effective January 31, 2017.  Def. CSF ¶ 17; Rasmussen Decl. ¶ 18.  Straub was 71 years old at the time.  Straub Decl. ¶ 3, ECF No. 102-3.  Rasmussen gave Straub's position, BRC Coordinator, to Ipo Mossman ("Mossman"), who had been

working on a special assignment for the County and was 66 years old at the time. Def. CSF ¶¶ 17-18; Straub Decl. ¶ 3; Rasmussen Decl. ¶ 9.

On July 12, 2017, Straub filed a "Charge of Discrimination" with the Hawaii Civil Rights Commission (the "HCRC") and the Equal Employment Opportunity Commission (the "EEOC"),[3] alleging discrimination based on retaliation, age, and disability. Pl. CSF ¶ 39; Def. Ex. S, ECF No. 94-30. Straub initiated this lawsuit on October 13, 2017. ECF No. 1.

After purchasing t-shirts from Straub's company Ultra-Hawaii since 2011, the County stopped purchasing t-shirts from Ultra Hawaii at some point in 2017 after his termination. *See* Pl. CSF ¶ 41; Arakawa Dep. at 15:20-18:9, ECF No. 102-18; Kehoe Decl. ¶ 4, ECF No. 94-7.

## B. Procedural History

Straub filed the FAC on November 9, 2017 alleging the following claims for relief: (1) Count One (violation of the FMLA, 29 U.S.C. § 2615(a)(1) and (2), based on interference and retaliation arising from his termination); (2) Count Two (violation of the FMLA, 29 U.S.C. § 2615(a)(1) and (2), based on interference and retaliation arising from discontinuation of purchasing t-shirts from

---

[3] Hawaii is a "worksharing" state "such that administrative claims filed with the EEOC are deemed 'dual-filed' with the state's local agency [the HCRC] and vice versa." *U.S. E.E.O.C. v. Glob. Horizons, Inc.*, 904 F. Supp. 2d 1074, 1090 n.2 (D. Haw. 2012).

Straub's business); (3) Count Three (violation of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12122(b)(4), for discrimination based on association with a disabled person); and (4) Count Four (violation of the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 623(a)(1) based on age discrimination) and (violation of Hawaii Revised Statutes ("HRS") § 378-2 based on age discrimination[4]).  ECF No. 1.

On July 15, 2019, Defendants filed their Motion for Summary Judgment.  ECF No. 93.  On July 22, 2019, Straub filed (1) his Opposition to Defendant's Motion for Summary Judgment and (2) his Counter Motion for Partial Summary Judgment.  ECF No. 101.  On August 2, 2019, Defendants filed (1) their Reply in support of their Motion for Summary Judgment and (2) their Opposition to Straub's Counter Motion for Partial Summary Judgment.  ECF No. 106.  On August 5, 2019, Straub filed his Reply in support of his Counter Motion for Partial Summary Judgment.  ECF No. 107.

A hearing was held on the Motions on August 8, 2019.

### III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed.

---

[4]  The FAC specifically asserts that Rasmussen is personally liable for aiding and abetting age discrimination in violation of under HRS § 378-2(a)(3).

R. Civ. P. 56(c).  Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

The moving party "bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323).  "When the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation marks omitted).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  When considering the evidence on a

motion for summary judgment, the court must draw all reasonable inferences in the light most favorable to the nonmoving party. *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1184 (9th Cir. 2016).

## IV. <u>DISCUSSION</u>

### A. Defendants' Motion for Summary Judgment

#### 1. *Counts One and Two (FMLA interference and retaliation claims)*

At the August 8, 2019 hearing, Straub clarified that: (1) in Count One of the FAC, he brings only an FMLA interference claim based on his termination; and (2) in Count Two, he brings only an FMLA retaliation claim based on the County discontinuing purchasing t-shirts from Straub's business, Ultra Hawaii.

Under Ninth Circuit law, FMLA interference claims are brought pursuant to 29 U.S.C. § 2615(a)(1), which only applies to "employees who simply take FMLA leave and as a consequence are subjected to unlawful actions by the employer." *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1133 n.7, 1135-36 (9th Cir. 2003); *see also Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001); *Straub v. Cty. of Maui*, 2018 WL 762383, at *2 (D. Haw. Feb. 7, 2018). Further, FMLA retaliation claims are brought pursuant to 29 U.S.C. § 2615(a)(2),

///

///

///

which only applies to "employees who *oppose* employer practices made unlawful by FMLA." *Xin Liu*, 347 F.3d at 1133 n.7.[5]

### a. Whether Straub is protected under the FMLA

Defendants argue that summary judgment should be granted on both the FMLA interference claim and the FMLA retaliation claim because Straub falsified his FMLA leave applications submitted in 2016. *See* ECF No. 93-1 at PageID #1622-23, 1634.

### i. Whether Straub falsified the FMLA leave applications submitted in 2016

First, the court considers whether Straub falsified his two applications for FMLA leave submitted in 2016 (Defendants do not challenge Straub's application for FMLA leave submitted in 2015)—and finds that there is no genuine dispute that Straub (or someone on his behalf) falsified those applications.[6]

---

[5] As discussed below, several other circuits do not interpret 29 U.S.C. § 2615(a)(1) & (2) in this way. *See, e.g.*, *Germanowski v. Harris*, 854 F.3d 68, 72-73 (1st Cir. 2017); *Vannoy v. Fed. Reserve Bank of Richmond*, 827 F.3d 296, 301, 304 (4th Cir. 2016); *Smith v. Hope Sch.*, 560 F.3d 694, 699, 702 (7th Cir. 2009). For example, the Seventh Circuit does not require that the employee oppose an employer practice in a § 2615(a)(2) claim; rather, an employee can show either: (1) "her employer intended to punish her for requesting or taking FMLA leave"; or (2) "she was treated differently from similarly situated employees who did not request FMLA leave, even though she was performing her job satisfactorily." *Smith*, 560 F.3d at 702.

[6] Straub asserts that Defendants waived any arguments concerning falsified FMLA paperwork because they did not seek a second or third medical opinion at the time Straub applied for FMLA leave, citing 29 C.F.R. § 825.305(c) and *Sims v. Alameda-Contra Costa Transit District*, 2 F. Supp. 2d 1253, 1263 (N.D. Cal. 1998). *See* ECF No. 101-1 at PageID #1935. 29 C.F.R. § 825.305(c) provides, in relevant part:

(continued . . . )

There are three relevant FMLA leave applications. The first FMLA leave application was submitted by Straub in 2015 for leave taken from November 2 to 13, 2015 (the "2015 Certification"). ECF No. 102-6. The 2015 Certification was filled out by hand (not typed) and included the handwritten signatures of Straub (dated November 2, 2015) and Kahlon (dated November 3, 2015). *See* ECF No. 94-14. Defendants do not challenge the authenticity of this certification. The second FMLA leave application was submitted by Straub in 2016 for leave taken from June 22 to July 8, 2016. ECF No. 94-12. This certification was typed except for Straub's handwritten signature (dated April 15, 2016). *See id.* This certification was purportedly signed by Nizam on April 12, 2016—on the "Signature of Health Care Provider" line, the following is typed:

---

> The employee must provide a complete and sufficient certification to the employer if required by the employer . . . . The employer shall advise an employee whenever the employer finds a certification incomplete or insufficient, and shall state in writing what additional information is necessary to make the certification complete and sufficient. . . . The employer must provide the employee with seven calendar days . . . to cure any such deficiency. If the deficiencies specified by the employer are not cured in the resubmitted certification, the employer may deny the taking of FMLA leave . . . .

29 C.F.R. § 825.305(c) is inapplicable where an employer is investigating a fraudulent certification *after* a lawsuit has been filed. Further, Straub's argument is without merit—Straub cannot deceive Defendants through falsified FMLA paperwork and then say later that Defendants waived any arguments about the certifications because they only later discovered the fraud. *See Marchisheck v. San Mateo Cty.,* 199 F.3d 1068, 1077 (9th Cir. 1999) (concluding that defendant was not estopped from challenging whether employee's son had a serious health condition because the the employee's FMLA paperwork was insufficient to meet FMLA standards).

"Digitally signed by Dr. Ahmad Nizam." ECF No. 94-12, at PageID #1692. The third FMLA leave application was submitted by Straub in 2016 for leave taken from January 3 to 20, 2017. *See* ECF No. 94-13. This certification was also typed except for Straub's handwritten signature (dated October 20, 2016). *See id.* This certification is also purportedly signed by Nizam on October 20, 2016—on the "Signature of Health Care Provider" line, the following is typed: "Digitally signed by Dr. Ahmad Nizam." *Id.* at PageID #1696. Defendants argue that the two leave applications Straub submitted in 2016 (collectively, the "2016 Certifications") were falsified. ECF No. 93-1 at PageID #1601.

In his declaration, Nizam says that he currently practices at the Core Institute, that Francine was his patient from September 2015 to April 2016, and that he has not treated Francine since April 2016. Nizam Decl. ¶¶ 5, 6, 13, ECF No. 94-1. In his declaration, Nizam also says that he "did not complete, authorize, or sign, digitally or otherwise, any FMLA paperwork for Robert Straub or Francine Straub," and that he "never communicated with Robert Straub via email." *Id.* ¶¶ 9, 12. Nizam also says that, "[m]y office keeps digital records of any FMLA paperwork I have completed. My patient records do not contain copies of any FMLA paperwork for Robert Straub or Francine Straub filled [sic] by me." *Id.* ¶ 9. Nizam also says that, "[b]ased on a review of The Core Institute's medical records

for Francine Straub, she did not return to The Core Institute until November 29, 2017, and was seen by Dr. Vardges Vandian [("Vandian")]." *Id.* ¶ 13.

In his deposition, Nizam testified that, when completing FMLA paperwork, he uses a handwritten signature, not a signature stamp. Nizam Dep. at 7:4-9, ECF No. 102-21.

Francine's Core Institute medical records from her November 29, 2017 visit with Vandian state that "[Francine's] last visit with Dr [sic] Nizam was in March of 2016." ECF No. 94-15 at PageID #1701.

In Francine's deposition, she testified that she had no appointments with Nizam during Straub's FMLA leave periods taken in June and July 2016 and in January 2017. *See* Francine Dep. at 62:10-12, 78:8-20, ECF No. 94-25.

In his declaration, Straub says that "[he] received all signed FMLA certification forms from [his] wife's doctors and submitted those forms without any alterations." Straub Decl. ¶ 43; *see also* Pl. CSF ¶ 17. And in his deposition, Straub testified that he received the certifications from Nizam via email. Straub Dep. at 73:21-74:3, 83:23-84:1, ECF No. 102-22; Pl. CSF ¶ 17. Straub does not provide any documentation of these emails, and he testified in his deposition that he deleted the emails. Straub Dep. at 74:4-13, 84:2-8. Straub also says in his declaration that "[he does] not possess the required knowledge nor technical skill to electronically ex. [sic] documents sent to me in connection with my request for

FMLA leave.  The only method for altering these documents available to me would be a handwritten alteration, which I used in my 2015 FMLA leave request."  Straub Decl. ¶ 42.  Further, Straub says that "[i]f the dates on the FMLA certification forms were changed, it is my belief that Daniels[7] or someone else from the County changed the dates on the FMLA certification forms, since I am unable to electronically alter them."  Straub Decl. ¶ 44.

At the August 8, 2019 hearing (and for the first time), Straub provided a different explanation for the false 2016 Certifications—that Nizam moved from one Core Institute location (Sun City West) to another (Phoenix), and that this move resulted in the Core Institute's staff sending a false certification.  The only evidence Straub presents to support his claims are two addresses: (1) the addresses listed for Nizam on the 2016 Certifications ("14520 W Granite Valley Dr/Sun City West AZ 85375"); and (2) the business address that Nizam gave at the deposition ("The Core Institute . . . 18444 North 25th Avenue, Unit 210, Phoenix, Arizona 85023").  ECF Nos. 94-12, 94-13; ECF No. 102-21 at PageID #2206.

When evaluating facts at the summary judgment stage:

> [F]acts must be viewed in the light most favorable to the
> nonmoving party only if there is a "genuine" dispute as
> to those facts.  As we have emphasized, when the moving
> party has carried its burden under Rule 56(c), its
> opponent must do more than simply show that there is

---

[7]  Jennifer Daniels "served as the Office Manager for the County of Maui Mayor's Office" from "January 2015 to October 2017."  Daniels Decl. ¶ 2, ECF No. 94-2.

> some metaphysical doubt as to the material facts.  Where
> the record taken as a whole could not lead a rational trier
> of fact to find for the nonmoving party, there is no
> 'genuine issue for trial.'  The mere existence of some
> alleged factual dispute between the parties will not defeat
> an otherwise properly supported motion for summary
> judgment; the requirement is that there be no genuine
> issue of material fact.  When opposing parties tell two
> different stories, one of which is blatantly contradicted by
> the record, so that no reasonable jury could believe it, a
> court should not adopt that version of the facts for
> purposes of ruling on a motion for summary judgment.

*Scott v. Harris*, 550 U.S. 372, 380 (2007) (citations, internal editorial marks, and

emphases omitted).  *See also Bohmker v. Oregon*, 903 F.3d 1029, 1044 (9th Cir.

2018) (finding that a declaration "wholly lacking" in factual support does not

create a genuine issue of material fact).  Because both of Straub's versions of

events are "blatantly contradicted by the record, so that no reasonable jury could

believe [them]," the court cannot adopt either of Straub's versions of events.  *Scott*,

550 U.S. at 380.

The record shows that the 2016 Certifications were false.  Nizam says

that he did not fill out or sign the 2016 Certifications and did not treat Francine

during the time period of the leave.  Nizam also says that he uses a handwritten

signature on FMLA paperwork, whereas the 2016 Certifications have a "digital

signature."  In fact, the 2016 Certifications are entirely typed, except for Straub's

handwritten signatures, unlike the 2015 Certification whose veracity is not

challenged.  Francine confirms that she was not treated by Nizam during Straub's

FMLA 2016 leave periods and this testimony is not contradicted.  Francine's
medical records also confirm that Nizam did not treat Francine during the relevant
time periods.

Straub has told two different stories to explain the false certifications.
At first, Straub's story was that someone working for the County "changed the
dates" on the 2016 Certifications.  This story does not make sense based on the
record.  It is undisputed that Straub took leave in June and July 2016 and in
January 2017.  But Nizam, Francine, and Francine's medical records all confirm
that she was not treated by Nizam during the relevant time periods when Straub
took leave—no alteration of dates on the 2016 Certifications would change the fact
that Straub took leave during time periods when Nizam was not treating Francine.

Then, at the August 8, 2019 hearing, Straub's story changed—now it
was the staff at the Core Institute who mistakenly filled out the FMLA paperwork.
This second story is simply pure speculation with no factual basis in the record.  It
does not follow that Nizam moved to a different Core Institute location based
solely on the fact that Nizam gave the Phoenix Core Institute address at the
deposition and that, according to the 2016 Certifications, he treated Francine at the
Sun City West location.[8]  And, it also does not follow that his office prepared

---

[8] It does not appear that Nizam was asked at his deposition whether he moved locations.

incorrect paperwork with a falsified signature simply because Nizam allegedly moved between different locations of the Core Institute. Even viewing these bits of evidence in the light most favorable to the nonmoving party, Straub's conclusions are simply too far-fetched to survive summary judgment.

Accordingly, Straub's evidence does not give rise to a *genuine* dispute of material fact as to whether the 2016 Certifications were falsified.

    ii.    Whether the 2016 Certifications can support Straub's FMLA interference claim

Defendants argue that the FMLA does not protect Straub because he fraudulently obtained FMLA leave from the County. *See* ECF No. 93 at PageID #1622 (citing 29 C.F.R. § 825.216). First, the court reviews the effect of the falsified 2016 Certifications on Straub's FMLA interference claim.

"An employee who fraudulently obtains FMLA leave from an employer is not protected by FMLA's job restoration or maintenance of health benefits provisions." 29 C.F.R. § 825.216(d); *see also Wheat v. Union Pac. R.R. Co.*, 2017 WL 2964722, at *8 (W.D. Mo. June 19, 2017); 29 U.S.C. § 2614(a)(1) (providing that an employee who takes leave under the FMLA is only entitled to reinstatement if the employee "takes leave under [the FMLA] for the intended purpose of the leave"). Further, "an employee is not entitled to FMLA leave on the basis of the falsified paperwork." *Smith v. Hope Sch.*, 560 F.3d 694, 701-02 (7th Cir. 2009). Because the paperwork was falsified for the two FMLA leave periods,

Straub is not protected from termination arising from his taking of that leave. Thus, Straub's interference claim cannot rely on the two 2016 Certifications.[9]

> iii.  Whether the 2016 Certifications can support Straub's FMLA retaliation claim

A more difficult question arises as to the effect of the falsified documents on Straub's retaliation claim, which concerns the County's alleged retaliation against Straub for filing a charge with the HCRC and the EEOC about his FMLA leave.  Defendants argue that this distinction does not matter, citing *Smith*, 560 F.3d at 701-02; *Wheat*, 2017 WL 2964722, at *8-10; and *Loomis v. Honda of America Manufacturing Inc.*, 2003 WL 133264, at *5-6 (S.D. Ohio Jan. 6, 2003).  *See* ECF No. 93-1 at PageID #1623, 1634.  But each of these cases is distinguishable from the instant case because they do not involve retaliation against the plaintiff for *opposing* the employer's unlawful behavior.[10]  And, in fact, these cases would not qualify as retaliation claims brought pursuant to 29 U.S.C. § 2615(a)(2) under Ninth Circuit law, which requires that an "employee[] . . .

---

[9]  This court does not reach whether non-material alterations might result in a different ruling because the alterations here were clearly material.  *See Smith*, 560 F.3d at 702.

[10]  In *Smith*, the retaliation claim is based on the employer denying an employee FMLA leave because of falsified paperwork, the employee not coming to work after the leave was denied, and the employer then firing the employee for not coming to work.  *See Smith*, 560 F.3d at 702.  In *Wheat* and *Loomis*, the retaliation claims are based on the employer discovering that an employee provided falsified FMLA paperwork and firing the employee as a result.  *See Wheat*, 2017 WL 2964722, at *8-9; *Loomis*, 2003 WL 133264, at *5-6.  In contrast, Straub alleges that he was retaliated against because he filed a charge with the HCRC alleging FMLA violations, and in fact, Defendants did not discover that the documents were falsified until after this lawsuit was filed.

*oppose* employer practices made unlawful by FMLA."  *Xin Liu*, 347 F.3d at 1133 n.7.

But there is another reason that Straub cannot rely on the 2016 Certifications—he did not *reasonably* (or subjectively) believe that he was protected under the FMLA.  This case resembles Title VII retaliation claims where the employee "opposed any practice made an unlawful employment practice by [Title VII]."  42 U.S.C. § 2000e-3(a).  By its terms, the Title VII "opposition clause" only protects "employees who oppose what they *reasonably perceive* as discrimination under [Title VII]."  *Learned v. City of Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988) (original emphasis omitted) (emphasis added).  In those cases, "[a]n employee need not establish that the opposed conduct in fact violated [Title VII] in order to establish a valid claim of retaliation."  *Id.* (citation omitted); *see also Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997).  The purpose of the "opposition clause" is to protect employees from retaliation even if they are mistaken as to the facts.  *See Sias v. City Demonstration Agency*, 588 F.2d 692, 695 (9th Cir. 1978).  *Moyo v. Gomez*, 40 F.3d 982 (9th Cir. 1994) defined "reasonableness" in this context:

> The reasonableness of [a plaintiff's] belief that an unlawful employment practice occurred must be assessed according to an objective standard—one that makes due allowance, moreover, for the limited knowledge possessed by most Title VII plaintiffs about the factual and legal bases of their claims.  We note again that a

> reasonable mistake may be one of fact or law. We also
> note that it has been long established that Title VII, as
> remedial legislation, is construed broadly. This directive
> applies to the reasonableness of a plaintiff's belief that a
> violation occurred, as well as to other matters.

*Id.* at 985 (citations omitted); *see also Miller v. Winco Holdings, Inc.*, 2006 WL 1471263, at *8 (D. Idaho May 22, 2006) (applying the "reasonable belief" test as set forth in *Moyo*).

While the Ninth Circuit has not addressed whether an employee's subjective belief is also required, "[c]ourts [elsewhere] uniformly enforce this merged subjective and objective standard." *Burke v. Soto*, 2017 WL 4811832, at *3 (E.D. Cal. Oct. 24, 2017) (citing cases). And when a subjective belief is required, then "the opposition clause does not protect the making of a knowingly false allegation." *Villa v. Cavamezze Grill, LLC*, 858 F.3d 896, 901 (4th Cir. 2017) (citations omitted). "[T]he employee must subjectively believe that the facts [the employee] is reporting are true." *Id.* (citations omitted). And therefore, "an employee who complains of conduct that [he] knows did not actually occur is not 'oppos[ing] any practice made an unlawful employment practice by [Title VII].'" *Id.* (citing 42 U.S.C. § 2000e-3(a)); *see also Burke*, 2017 WL 4811832, at *3.

Utilizing this framework, Straub did not objectively or subjectively believe that he would be protected under the FMLA for the leave he took based on

the 2016 Certifications.  Thus, Straub cannot rely on the two 2016 Certifications

for his FMLA retaliation claim.

Accordingly, Straub's interference and retaliation claims may only

arise from the 2015 FMLA leave period (which, again, Defendants do not claim

was fraudulent).[11]

  b. *Whether the interference claim survives summary judgment*

To survive a motion for summary judgment on an FMLA interference

claim, a plaintiff "need only prove by a preponderance of the evidence that [his]

taking of FMLA-protected leave constituted a negative factor in the decision to

terminate [him]."  *Bachelder*, 259 F.3d at 1125.  The *McDonnell Douglas* burden-

shifting framework does not apply.  *Id.*; *see McDonnell Douglas Corp. v. Green,*

411 U.S. 792 (1973).

There is simply no temporal proximity between Straub's FMLA leave

taken from November 2 to 13, 2015 and his termination on January 31, 2017.

Further, even if Rasmussen did in fact disfavor employees taking leave for more

than two weeks, *see* Pl.'s CSF ¶ 27—Straub only took leave from November 2 to

---

[11]  Because the court has invalidated Straub's entitlement to FMLA leave taken in 2016 and 2017, it will not address Defendants' argument that Straub was not entitled to FMLA leave in 2016 and 2017 because he did not provide "actual care" to Francine or because Francine did not have a "serious health condition" during that time.  *See* ECF No. 93-1 at PageID #1617, 1624.  As to these arguments, Defendants do not challenge the 2015 FMLA leave.

13, 2015 (eleven days), *see* Pl.'s Ex. 1, ECF No. 102-6.[12]  Thus, there is no

genuine question of material fact concerning whether Straub's 2015 FMLA leave

was a negative factor in the County's termination decision.  Summary judgment is

granted as to Count One.

        *c.*     *Whether the retaliation claim survives summary judgment*

        As discussed above, Straub's 2015 FMLA leave is still a basis to

pursue a retaliation claim.  While the Ninth Circuit has not yet addressed an FMLA

retaliation claim, other circuits have described three necessary elements of FMLA

retaliation claims: (1) a protected activity, (2) an adverse employment action, and

(3) a causal link between the two.  *See Straub*, 2018 WL 762383, at *3 (citing

cases).  Also, the Ninth Circuit has not yet answered whether the *McDonnell*

*Douglas* framework applies to FMLA retaliation claims.  *See Bachelder*, 259 F.3d

at 1125 n.11.[13]  Regardless, Straub survives summary judgment with or without

application of the *McDonnell Douglas* framework.

---

    [12]  Straub's CSF ¶ 16 stating that "[a]ll three of Straub's FMLA leaves were more than two weeks long" is simply incorrect.

    [13]  Despite not expressly deciding whether the *McDonnell-Douglas* framework applies to FMLA retaliation claims, the Ninth Circuit has recognized that most other circuits have adopted some version of this framework.  *See Sander v. City of Newport*, 657 F.3d 772, 777 (9th Cir. 2011) (citing cases).  Moreover, *Alcozar-Murphy v. Asarco LLC*, 744 F. App'x 411 (9th Cir. 2018) assumed (without any discussion) that the *McDonnell-Douglas* framework applies to FMLA retaliation claims.  And numerous district courts in the Ninth Circuit have applied *McDonnell-Douglas* to FMLA retaliation claims.  *See e.g.*, *Walker v. City of Pocatello*, 2018 WL 650417, at *6 (D. Idaho Jan. 31, 2018) (citing cases), *rev'd and remanded on other grounds*, 764 F. App'x 646 (9th Cir. 2019); *Kelleher v. Fred Murphy Stores Inc.*, 302 F.R.D. 596, 598 (E.D. Wash. 2014).

i.         If the *McDonnell Douglas* framework applies

Straub has established a prima facie case of FMLA retaliation. Straub has shown a protected activity—the July 12, 2017 filing of a charge of discrimination with the HCRC and the EEOC. He has shown an adverse employment action—the County discontinuing purchasing t-shirts from his business, Ultra Hawaii. *See Straub*, 2018 WL 762383, at *3-4 (determining that "adverse employment actions" can extend beyond employment-related retaliatory acts). And Straub has shown causality—the County purchased t-shirts from Ultra Hawaii since 2011, and then stopped purchasing the t-shirts in October 2017, shortly after Straub filed the HCRC/EEOC charge on July 12, 2017.

Defendants provide a legitimate, non-discriminatory reason why they discontinued purchasing t-shirts: they found a company selling better quality t-shirts at a lower price.

But because of the temporal proximity between Straub filing the HCRC/EEOC charge and the County discontinuing their six-year practice of buying t-shirts from Straub's company, Straub has provided sufficient evidence to show that the County's explanation for terminating their purchases from Ultra Hawaii was pretext. *See Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850 (9th Cir. 2004) ("When adverse employment decisions closely follow complaints of

discrimination, retaliatory intent may be inferred.") (citing *Bell v. Clackamas Cty.*, 341 F.3d 858, 865-66 (9th Cir. 2003)).

      ii.    If the *McDonnell Douglas* framework does not apply

Further, even if the *McDonnell Douglas* framework does not apply to an FMLA retaliation claim, the record establishes a genuine issue of material fact. As stated above, the County purchased t-shirts from Straub since 2011, but stopped in October 2017, three months after Straub filed his HCRC/EEOC charge.

    **2.    Count Three (ADA association-discrimination claim)**

The ADA prohibits employer discrimination based on "the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). First, Straub must establish a prima facie case of ADA association discrimination. *See Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001) ("Under the ADA, when an employee establishes a prima facie case of discrimination because of a disability, and the employer provides a non-discriminatory reason for that discharge which disclaims any reliance on the employee's disability in having taken the employment action, the analysis developed in *McDonnell Douglas* for suits under Title VII of the Civil Rights Act of 1964 applies.") (footnote, citations, and quotation marks omitted)*; see also Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012).

To establish a prima facie case of ADA association discrimination, a plaintiff must show:

> (1) he was qualified to perform the job; (2) his employer knew he had a relative or associate with a disability; (3) he was subjected to an adverse employment action; and (4) there is a causal connection between the adverse employment action and the employee's association with a disabled person.

*Austin v. Horizon Human Servs. Inc.*, 2014 WL 1053620, at *2 (D. Ariz. Mar. 19, 2014) (citing *E.R.K ex rel. R.K. v. Haw. Dep't of Educ.*, 728 F.3d 982, 992 (9th Cir. 2013) (other citation omitted).

To determine if an individual is qualified to perform the job, "[t]he court . . . examines whether the individual satisfies the requisite skill, experience, education and other job-related requirements of the position." *Samper*, 675 F.3d at 1237 (citation and quotation marks omitted). "Although [the employee] retains the burden of proof in making [his] prima facie case, [the employer] has the burden of production in establishing what job functions are essential as much of the information which determines those essential functions lies uniquely with the employer." *Id.* (citation and quotation marks omitted). Defendants argue that Straub was not qualified for the job because he did not have excellent customer service skills, which were required for the position. ECF No. 106 at PageID #2358. The job description for the BRC Coordinator position requires "excellent customer service" skills. Def. Ex. T, ECF No. 94-31 at PageID #1819. But Straub

has shown some proof that he had the requisite customer service skills, including his work in prior positions with the County.  *See* Pl. Ex. 6, ECF No. 102-11.

The County knew that Francine had a disability because Straub indicated in his FMLA paperwork that his wife had Parkinson's disease.  *See* ECF No. 94-12, 94-13, 94-14.

Straub was subject to an adverse employment action because he was terminated.  *See Weil v. Citizens Telecom Servs. Co.*, 922 F.3d 993, 1003 (9th Cir. 2019); *Ray v. Henderson*, 217 F.3d 1234, 1241 n.4 (9th Cir. 2000).[14]

Straub has shown a causal connection between his termination and his association with his wife, a disabled person, because Straub was terminated only four days after returning from leave to care for his wife.  *Pardi*, 389 F.3d at 850 ("The temporal proximity between [the employee's] protected activities and [the employer's] adverse acts sufficiently raises an inference of a causal link.").

Defendants proffer several legitimate and non-discriminatory reasons for Straub's termination:  According to Andaya, several County staff members complained about Straub being difficult to work with.  Andaya Decl. ¶ 5. According to Arakawa and Rasmussen, Arakawa complained to Rasmussen that Straub had a poor attitude and unwillingness to help her clean up around the office.

---

[14]  Although *Weil* and "*Ray* addressed retaliation claims under Title VII, a retaliation claim under the ADA is analyzed under the same framework."  *Pardi*, 389 F.3d at 850 n.5.

Def. CSF ¶ 9; Rasmussen Decl. ¶ 5; K. Arakawa Decl. ¶ 3. According to Rasmussen and Maui Chamber of Commerce President Pamela Tumpap, Tumpap complained to Rasmussen that Straub was rude to vendors at the 2016 Made in Maui Festival. Def. CSF ¶ 10; Rasmussen Decl. ¶ 6; Tumpap Decl. ¶ 3, ECF No. 9.

In January 2017, the Department was facing budget cuts and, accordingly, had to "make some staff adjustments." Def. CSF ¶¶ 14-16. The Mayor gave Rasmussen authority to layoff staff in the Department. *Id.* ¶ 18. In January 2017, Rasmussen asked Arakawa whether she wanted to continue working with Straub, or would rather work with Mossman. Arakawa Decl. ¶ 4; Rasmussen Decl. ¶ 13. Arakawa told Rasmussen that she would prefer to work with Mossman because he had a positive attitude, worked well with others, and had a good customer service background. Def. CSF ¶ 17. For the above reasons as well as the fact that Straub seemed to have a negative attitude towards being placed in the OED, Rasmussen decided to lay off Straub and put Mossman in the Department. *Id.* ¶ 20; Rasmussen Decl. ¶ 13. Rasmussen also laid off another employee at the OED, Zalsos, who had performance issues. Def. CSF ¶ 19.

The County's explanation that the OED faced budget cuts and Straub was terminated because he lacked customer service skills, was hard to work with, and had a negative attitude are in no way related to Straub's association with

Francine, and are legitimate, nondiscriminatory reasons for Straub's termination. *See Brown v. Cirque Du Soleil Nev., Inc.*, 255 F. App'x 117, 119 (9th Cir. 2007) (holding that a negative attitude and unprofessional conduct is a legitimate, nondiscriminatory reason for termination) (citing cases).

Next, on summary judgment, the court must determine whether Straub provided specific and substantial evidence creating a genuine issue of material fact as to whether the County's proffered reasons for termination were pretext for association discrimination. *See Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1095 (9th Cir. 2005). And Straub argues that the following evidence shows that the County's proffered reasons for terminating Straub were pretext for association discrimination: (1) Rasmussen has a relative with Parkinson's disease and is aware of the time needed to care for someone with the disease; (2) Straub took several periods of leave prior to his termination (one in 2015, 2016, and 2017); (3) Rasmussen made a statement regarding her desire for shorter leave time; (4) Straub's termination was only four days after he returned from leave during which he cared for Francine; and (5) the reasons for his termination were subjective. ECF No. 101-1 at PageID #1955.

The County terminated Straub four days after he returned from leave to care for Francine. This evidence creates an issue of material fact regarding the

temporal proximity between the County's actions and Straub's leave. *See Yount v. Regent Univ., Inc.*, 2009 WL 995596, at *8 (D. Ariz. Apr. 14, 2009).

And while the record shows that Straub may have had some blemishes on his record, he had few (and no formal) blemishes. Further, the reasons given to terminate Straub were subjective (e.g., having a negative attitude). Other than a few complaints, none of which were formally documented by the County, the County has provided very little reason to fire Straub. Also, the County's argument that Straub was terminated for budgetary reasons falls flat because the County could have terminated Mossman instead of Straub and achieved the same reduction in budget.[15]

Thus, Straub has raised a genuine issue of fact whether the County's reasons for termination were pretextual. Accordingly, Count Three survives summary judgment.

### 3.   *Count Four (Age Discrimination Claims)*

#### a.   *ADEA*

The ADEA prohibits employer discrimination "because of [an] individual's age." 29 U.S.C. § 623(a). Specifically, an employer may not "fail or refuse to hire or to discharge any individual or otherwise discriminate against any

---

[15] The County conceded at the hearing that it could have terminated Mossman instead of Straub and saved the same amount in salary costs.

individual with respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's age." *Id.* Because Straub has provided

only circumstantial evidence of age discrimination, the court will apply the

*McDonnell Douglas* framework. *See Enlow v. Salem-Keizer Yellow Cab Co.*, 389

F.3d 802, 812 (9th Cir. 2004) ("The *McDonnell Douglas* formula applies under the

ADEA where an employee must rely on circumstantial evidence."). Under the

*McDonnell Douglas* framework:

> The employee must first establish a prima facie case of
> age discrimination. If the employee does so, the burden
> shifts to the employer to articulate a legitimate, non-
> discriminatory reason for its adverse employment action.
> If the employer satisfies its burden, the employee must
> then prove that the reason advanced by the employer
> constitutes mere pretext for unlawful discrimination.

*Schechner v. KPIX-TV*, 686 F.3d 1018, 1023 n.5 (9th Cir. 2012) (citation and

quotation marks omitted).

      To make a prima facie case of age discrimination based on disparate

treatment, the plaintiff must show that "he was (1) at least forty years old,

(2) performing his job satisfactorily, (3) discharged, and (4) either replaced by

substantially younger employees with equal or inferior qualifications or discharged

under circumstances otherwise giving rise to an inference of age discrimination."

*Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citation

and quotation marks omitted); *see also Schechner*, 686 F.3d at 1023.

To establish the fourth prong by showing that plaintiff is replaced by a "substantially younger employee," an age difference of less than ten years is "presumptively insubstantial." *See France v. Johnson*, 795 F.3d 1170, 1174 (9th Cir. 2015). This presumption can be rebutted "by producing additional evidence to show that the employer considered his or her age to be significant." *Id.*

Straub was 71 years old when he was terminated. Straub Decl. ¶ 3. His replacement, Mossman, was 66 years old. *Id.*; Def. CSF ¶ 18. This five-year age difference is presumptively insubstantial. Straub has produced no additional evidence to show that the County considered Straub's age to be significant. Thus, Straub has not met his burden to establish a prima facie case of age discrimination under the ADEA.

> b. *HRS § 378-2*

HRS § 378-2 makes unlawful for employers to terminate or otherwise discriminate against employees because of age, but it does not protect a specific age group. *See Schefke v. Reliable Collection Agency, Ltd.*, 96 Haw. 408, 441 n.63, 32 P.3d 85 n.63 (2001). The Hawaii Supreme Court utilizes the *McDonnell Douglas* burden-shifting framework for age discrimination claims brought pursuant to HRS § 378-2. *French v. Haw. Pizza Hut, Inc.*, 105 Haw. 462, 473, 99 P.3d 1046, 1057 (2004); *see also Shoppe v. Gucci Am., Inc.*, 94 Haw. 368, 378, 14 P.3d 1049, 1059 (2000); *Furukawa v. Honolulu Zoological Soc.*, 85 Haw. 7, 13,

936 P.2d 643, 649 (1997).  Further, courts may look to "interpretations of analogous federal laws by the federal courts for guidance" in interpreting HRS § 378-2.  *Schefke*, 96 Haw. at 438, 32 P.3d at 82 (citations and quotation marks omitted).

Under Hawaii law, a plaintiff must establish the following elements by a preponderance of the evidence to make a prima facie case: "(1) that plaintiff is a member of a protected class; (2) that plaintiff is qualified for the position for which plaintiff has applied or from which plaintiff has been discharged; (3) that plaintiff has suffered some adverse employment action, such as a discharge; and (4) that the position still exists."  *Shoppe*, 94 Haw. at 378, 14 P.3d at 1059; *see also Reyes v. HMA, Inc.*, 2008 WL 1883904, at *4 (D. Haw. Apr. 28, 2008) ("Because this court is interpreting Hawaii law, this court is bound by the Hawaii Supreme Court's statement of the prima facie case for an age discrimination claim.").

While Defendants do not directly address the HRS § 378-2 prima facie elements, it appears that all elements have been established by Straub.  The only prima facie element that Defendants might challenge would be Straub's qualifications for the position, and the court has already found that Straub is qualified for the BRC Coordinator position.

Because Straub has established a prima facie case of age discrimination pursuant to HRS § 378-2, the burden shifts to the County to

demonstrate a legitimate, nondiscriminatory reason (that is, unrelated to age) for terminating Straub.

As discussed above, the court finds that Defendants have provided a legitimate, non-discriminatory reason for terminating Straub—although it is a subjective one.  Thus, Straub must establish pretext.

> A plaintiff may establish pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.  If the plaintiff establishes that defendant's proffered reasons were pretextual, the trier of fact may, but is not required to, find for the plaintiff. At all times, the burden of persuasion remains on the plaintiff.

*Shoppe*, 94 Haw. at 379, 14 P.3d at 1060 (citations and editorial marks omitted).

It is not clear what quantum of evidence is necessary to demonstrate pretext under Hawaii law.  *See Reyes*, 2008 WL 1883904, at *8.  But the court finds that no rational trier of fact, without more, could draw an inference of age discrimination when Straub's replacement was 66 years old and only five years younger than Straub.  There is simply no evidence in the record to suggest that Straub was terminated based on his age, particularly where his replacement was 66

///

///

///

///

32

years of age.  Accordingly, because Straub has not met his burden to demonstrate pretext under Hawaii law, summary judgment is GRANTED on Count Four.[16]

### 4. *Affirmative Defense of After-Acquired Evidence*

In their Motion for Summary Judgment, Defendants invoke the after-acquired evidence doctrine as an affirmative defense.  *See* ECF No. 93-1 at PageID #1637.  The after-acquired evidence doctrine "does not immunize the employer from liability," but instead it "bears on the specific remedy to be ordered." *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 759 (9th Cir. 1996) (citing *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352 (1995)); *see also Montgomery v. Union Pac. R.R. Co.*, 2019 WL 1790281, at *3 (D. Ariz. Apr. 24, 2019) ("The Court finds that after-acquired evidence is not relevant to Defendant's liability.").  Defendants must prove this affirmative defense by a preponderance of the evidence.  *O'Day*, 79 F.3d at 761.

Defendants argue that the County would have terminated Straub for using County equipment and time to run his business, Ultra Hawaii.  ECF No. 93-1 at PageID #1637-38.  Defendants proffer evidence that Straub used his County email address to send hundreds of emails on behalf of his Ultra Hawaii business.  Def. CSF ¶ 34.  Straub asserts that County employees emailed him at his County

---

[16] This claim was the only one brought against Rasmussen as an individual.  *See* FAC, ECF No. 8 at PageID #18.  Because the court grants summary judgment on this claim, no claims remain against Rasmussen as an individual.  *See* ECF No. 93-1 at PageID #1632.

email account to purchase merchandise from Ultra Hawaii. Pl. CSF ¶ 45. Straub asserts that he then forwarded those emails to his personal account to reply. *Id.* Straub attaches Exhibit 8, which appears to show that he forwarded some messages from his County email to his personal email. Pl. Ex. E, ECF No. 102-13. Accordingly, there is a genuine issue of material fact whether Straub used County equipment and time to conduct business for his Ultra Hawaii company.

Defendants proffer evidence that Straub submitted falsified FMLA paperwork. As the court previously found, there is no a genuine issue of material fact that Straub falsified his FMLA paperwork. The question that remains is whether the County would have terminated Straub for submitting falsified FMLA paperwork (had it known at the time). In her declaration, Rasmussen states that she would have terminated Straub for falsifying his FMLA paperwork. Rasmussen Decl. ¶ 21. But Defendants provide no other evidence to show that the County would have fired Straub for this behavior, such as County policy or past practice. For these reasons, there is a genuine dispute of material fact whether the County would have fired Straub for falsifying FMLA paperwork, and the motion for summary judgment based on the affirmative defense of after-acquired evidence is DENIED.

### 5. *Unclean Hands*

The County argues that the doctrine of unclean hands precludes Straub from profiting from his own misconduct, in this case Straub's falsification of FMLA paperwork and Straub's improper use of County time and equipment to conduct Ultra Hawaii business. *See* ECF No. 93-1 at PageID #1638-39. "A plaintiff asking a court for equitable relief 'must come with clean hands.'" *Northbay Wellness Grp., Inc. v. Beyries*, 789 F.3d 956, 959 (9th Cir. 2015) (quoting *Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 387 (1944)). And, "the doctrine of unclean hands requires that a plaintiff 'shall have acted fairly and without fraud or deceit as to the controversy in issue.'" *Id.* (quoting *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1097 (9th Cir. 1985)). "Under federal law, to prevail on a defense of unclean hands a defendant must demonstrate by clear and convincing evidence: (1) 'that the plaintiff's conduct is inequitable'; and (2) 'that the conduct relates to the subject matter of [the plaintiff's] claims.'" *Nat.-Immunogenics Corp. v. Newport Trial Grp.*, 2019 WL 1751837, at *5 (C.D. Cal. Feb. 28, 2019) (quoting *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987)).

Because the court finds that Straub is not protected under the FMLA for leave obtained through falsified paperwork, the doctrine of clean hands is essentially moot on this issue.

Because the court finds that there is a genuine dispute of material fact concerning whether Straub used County time and equipment to conduct Ultra Hawaii business, summary judgment based on the unclean hands doctrine would be inappropriate.[17]

Accordingly, Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part.

## B.    Plaintiff's Counter-Motion for Partial Summary Judgment

Straub moves for partial summary judgment.  ECF No. 101 at PageID #1919.  The only remaining claims are the FMLA retaliation claim and the ADA association-discrimination claim.  "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).  And so a plaintiff moving for summary judgment on an affirmative claim "must establish beyond peradventure *all* of the essential elements of the claim . . . to warrant

---

[17]    Defendants also argue that Straub is not entitled to reinstatement, front pay, or back pay because he was an "at will" employee and a Mayoral-appointee whose employment would have been automatically terminated when the new Maui Mayor, Mike Victorino, took office.  To support this argument, Defendants only cite to *Assaturian v. Hertz Corp.*, 2014 WL 4374430, at *10-11 (D. Haw. Sept. 2, 2014).  While *Assaturian* does discuss back and front pay, it does not address "automatic termination" or the like.  Because Defendants cite no relevant authority, the court will not address this argument.

judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Put another way, "[its] showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 488 (1984)) (emphasis omitted). As is clear from the discussion of Defendant's Motion for Summary Judgment, Straub has utterly failed to meet this burden for either the FMLA retaliation claim or the ADA association-discrimination claim—although these claims survived Defendants' Motion for Summary Judgment, clearly there is an insufficient basis to grant summary judgment in *favor* of Plaintiff. Accordingly, Straub's Counter Motion for Partial Summary Judgment is DENIED.

## V. CONCLUSION

For the foregoing reasons, the court: (1) GRANTS in part and DENIES in part Defendants' Motion for Summary Judgment; and (2) DENIES Straub's Counter Motion for Partial Summary Judgment.

Summary judgment is granted in favor of the County as to Count One (claim for violation of the FMLA based on interference arising from Straub's termination) and in favor of the County and Rasmussen as to Count Four (claims for violation of the ADEA and HRS § 378-2 based on age discrimination).

Counts Two (claim for violation of the FMLA based on retaliation arising from the County's discontinuation of purchasing t-shirts from Straub's business) and Three (claim for violation of the ADA based on association discrimination) remain against the County.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 10, 2019.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Straub v. Cty. of Maui, et al.*, Civ No. 17-00516 JMS-WRP, Amended Order (1) Granting in Part and Denying in Part Defendants' Motion for Summary Judgment, ECF No. 93; and (2) Denying Plaintiff's Counter Motion for Partial Summary Judgment, ECF No. 101

38